Next case we're going to hear is Maage Auditorium v. Prince George's County, and Mr. Smith will hear from him. Good morning, Your Honor. May it please the Court. I represent Maags Auditorium and Neco Enterprise. Is that the way they pronounce it, Maags? Yes, Your Honor. And as Your Honor is aware, these two cases, they were consolidated for oral arguments because the zoning ordinance in question were challenged in both cases. The Statute CB-46-2010, it was adopted by Prince George's County in 2010, and it defines adult entertainment as any exhibition, performance, or dance of any type conducted in a premise where such exhibition, performance, dance involves a person who is unclothed or in such attire, costume, or clothing. As to expose the view of any portion of the breasts below the top of the arola, or any portion of the public region, anus, buttocks, vulva, or genitals, or touches, caresses, or fondles the breasts, buttocks, anus, genitals, or public region of another person, or permit the touching, caressing, or fondling of his or her own breasts, buttocks, anus, genitals, or public region by another person. With the intent to sexually arouse or excite another person. The statute further banned adult entertainment business from being located anywhere except in the I-2 zone. Can I ask you a question on that, and maybe you'll get to it. If, and I know you challenged this, but if the door-to-door measurement were an appropriate measurement or an acceptable measurement, do you agree that there would be 62 sites available? No, Your Honor. You don't. Okay. And let me answer your question directly. The reason is that the district court never took into consideration any additional, any economical, no other assessment, and the court, the district court assessed that it didn't need to. But there are cases that state that the renting factors didn't really mean that you can't or you shouldn't take into consideration any additional factors. And I went into it in the brief that talks about other factors such as if there, for example, are leases, extended leases, 25-year lease, 99-year lease, as is often found in commercial leases. Then there is no way that the court should consider those available. And that's one of the factors, that's one of the issues that the district court just refused to address. And I believe that the appellant's expert did touch on this to say, yes, there may be 15 possibly available. However, we don't know if there are extended leases on those properties. Whose burden is that? This was a summary judgment issue. And so while they were competing expert, we believe that the, while it's a question of law, we concede it's a question of law, that there were sufficient facts, genuine facts in dispute such as. No, I understand what the summary judgment burden is. But you just posited an argument that we just don't know whether or not these 60 or whatever the number was of potentially available sites were actually really available because of the possibility that there were long-term leases and other restrictions that effectively made them unavailable. And you said your expert suggested that we don't know that. And my question is, well, whose burden was it to produce that evidence? Well, because the county is in control of, the county is in the best position to determine whether or not there's a lease or a long-term lease on any of the property that's in question. We believe that's the county. I don't know if Renton made all that irrelevant. Well, I don't think it. Well, I think it's basically, I mean, if it's a long-term lease, then you go to the lessee. I mean, the fact is all the economic factors, whether they're available, whether people are willing, whether it's too costly, all of those factors, the Supreme Court said basically they say they have to fend for themselves in the market. It's irrelevant to whether a First Amendment violation was created. I don't agree that's what Renton says. It says that, yes, certain — with other prospective purchasers and lessees does not give rise to a First Amendment violation. Well, but what I'm saying, Your Honor, is that, yes, you fend for yourself, but if they're not available, how do you fend for something that's not available? That's exactly what they said in Renton. They said there are practically none available. And the Supreme Court said that's not the problem. Availability, I think, was addressed in the number of circuit court that says that those factors is not what Renton was talking about, that the fact that something is not available because it's tied up for 25 or 99 years is not one of the factors that Renton was discussing. The other issue is that the fact that the CB-56-2011, it attached the language with the intent to sexually arouse or excite another person. Plus, the statute allowed certain clubs to be available only if they obtained a special exception. So you have to move to the I-2 zone. If you want to remain in your current location, you have to apply for special exception. And the statute talked about the condition. I think they list seven factors under which a club could apply for, what the standards were for evaluating that special exception. The first was the purpose, use and site plan are in harmony with the purpose of the subtitle. Second was the purpose, use is in conformance with the applicable requirements and regulations. And it goes on where I list all seven of them. The problem with that is that those are just, without question, totally ambiguous. And let me give you, for example, for example, I think in Stakeout LLC, it's a North Carolina case, the club was required to go to a club. Or the owners were required to go through a special exception to build a club. But in that statute, and that's one of the cases that the district court used to justify its decision. In that statute, it lists, I think, 19 factors. And it didn't say, unlike this statute, it didn't say the purpose, use will not adversely affect the health and safety. It lists what those factors are. For example, this is only if the business wants to try to stay in a zone that's not I-2. The Prince George's County's position is that you should go to I-2 zone, one of the available sites there, unless you want to stay, and then you're going to be subject to the normal special exception provisions. And that is true for all kinds of real estate transactions. And it's a discretionary examination under a lot of factors. And that doesn't really bear on whether the relegation to I-2 for these adult entertainment businesses is constitutional or not. Well, I think it does, because it's the county that's making the evaluation. It's the county that's determined, for example, in number six, that the site, the proposed site plan is in conformance with the approved type of tree conservation. For example, the proposed use will not be detrimental to the use, development, or adjacent properties or the general neighborhood. In Steakhouse, which is the case the district court says, rather than being just general and allowing just total discretion on the county, it lists those factors. Look at traffic, look at parking, look at the lights, look at the water runoff, for example. Those factors were listed so that any person that's challenging the statute. In this situation, if this club decides that, okay, we want to challenge the decision of the county, how does one, in effect, determine whether or not the purpose use will not adversely affect the health, the safety, or welfare of a resident or workers in that area? If it's not listed out or given more details to say, okay, if there are certain factors that are in effect, how does one determine whether or not the purpose use will not adversely affect the health, the safety, or welfare of a resident or workers in that area? If there are 50 calls to the police department, that's overburdening the police department. If there are too many lights, if there are not enough parking space, there's no way that a club can challenge the discretionary judgment of someone who's making the decision. And I think there's cases that deals with that. Under the constitutional analysis, does the county have to allow the business to stay where it is, subject to a special exception? They could have excluded that altogether, couldn't they, as long as there were time, place, and manner regulations consistent with Renton? Well, as long as they have sufficient alternative sites that's sufficient to the number of clubs that's available. Yes, I would agree with that. Okay, so you would agree that if there are alternative sites, sufficient alternative sites, the idea that a business could elect to try to get a special exception really doesn't, isn't relevant to the calculus. Well, I think it's a little more than that. If there's sufficient sites, if they're given sufficient time to make the adjustments, then yes, I would agree with that. The statute could and should have been written differently with special exceptions in mind. However, the argument is that once the county enacted the special exception, and they put certain limitations on it, without sufficient guidance, then that becomes, in essence, a licensing statute. Where you're saying, okay, to stay here, you have to do X, Y, and Z. That becomes a license. And when you're doing the license and you're taking away certain constitutional rights, you have to be specific enough to say that somebody who's challenging or somebody who is affected by this can say, okay, we have enough parking space, so that should not be an issue. We, the light doesn't affect the adjoining property, so that should not be an issue. Under the county's statute, there is no way for any club owner or any property owner to challenge the county's interpretation. And that's just what it is. It's just an arbitrary interpretation. Well, but the exception, I guess your client would have the burden to prove the exception, and why shouldn't we wait to see how this language, which you suggest is vague, and admittedly, it's not the most precise language, but condemned as we are to words, it's what we have to use. Why not wait until the county actually applies the language in the context of a specific case and then decide whether or not it's being applied unfairly? I don't think we have to wait, because the county has in fact approved one of the clubs by the means of special exceptions. And there's no way in the interpretation of these seven standards, there's no way for someone, even the club owner, who got approved to say, I got approved because I did this, this, and this. Because it's the county's, the person who interpret whether or not that club meets the requirement for the special exception. For example, the proposed use will not adversely affect the health, safety, or welfare of the resident. There were no standards set out to say, okay, this club amongst all of them had the least amount of crime. This club had the most parking. This club had the least effect on the adjacent property by way of water runoff. There was none of those standards. The only club that actually got approved is a club that's politically connected. That club was run by a former senator. There has been litigation in that, I believe it's an alleged case, where it was challenged to say the only reason that that club is favored is because of the past political connection. The district court granted summary judgment on the equal protection claim, and we believe that's error. Because I believe it's the village of Willowbrook case where the, I believe the appellant made the argument that here are three reasons why the village discriminated against us. And the Supreme Court accepted that to say, they alleged that they were treated differently, that it was not fair, that it was not fair. That it was an arbitrary decision, and that because it was because they either wanted to take our land or just didn't care about the fact that they took our land. I think you're beyond your time on this, and you can come up and continue this on your rebuttal time if you wish. Thank you. Thank you. I think six of the eight claims from the images, badges, whatever the auditorium calls itself, and then held two claims until post-discovery. Those claims were the alternative avenues of communication, and then a supplemental state law claim that's not before this court. So, post-discovery, the appellants in this case never provided any discovery depositions of the county's expert, never identified any material facts in dispute. And in fact, its own expert conceded on the record, at their deposition, that there were sufficient alternative avenues, 15 for the 14 existing adult entertainment sites. And that concession alone would be sufficient, let alone the county's undisputed showing that there are 62 available sites in the I-2 alone. So from that basis, Judge Chasnow properly ruled there was no dispute of material fact, that alternative, sufficient alternative avenues existed, and awarded judgment in the county's favor. The real issue here on that, I think that the appellants are trying to sharpen, is whether Judge Chasnow properly excluded properties that were the subject of restrictive covenants. The testimony or the deposition testimony of appellant's expert was there were two properties that were the subject of restrictive covenants. Specifically, they did not allow adult entertainment amongst another ton of uses, junkyards, things of that nature. The appellants argued that the court should apply Ninth Circuit precedents, specifically the Topanga case. And Judge Chasnow would decline to do so, citing this court's precedent in McDougal, imaginary images, a number of other cases. Basically saying that this court has adopted the strict Renton Standard, that issues of economic availability, site availability, things of that nature are not proper considerations in the alternative avenues analysis. And we don't think that there's any basis been shown here today through Supreme Court cases, later Fourth Circuit precedent, that would require this court to rule that Judge Chasnow erred by refusing to adopt the Ninth Circuit Topanga case. Did their expert say were affected by the covenants too? Two. And I believe that's reflected in the deposition or in the facts before Judge Chasnow. Were there similar challenges made to the other 60? No, Your Honor. And in fact, if you look at the record, the appellants never took the deposition of the county's counsel or the county's expert, sorry. So there is no deposition in the record, a contrary deposition establishing any material facts, excuse me, of the county's expert. So without them providing that material to Judge Chasnow, the county's expert opinion comes in uncontested. That includes any evidence of these possible existence of long-term leases, which would make it difficult if not impossible. No, Your Honor. I would suggest, Your Honor, the record is absolutely devoid of any suggestion of long-term leases. Specifically, none were ever cited in the opposition to the county's motion for summary judgment. And obviously, the appellants bear the burden of bringing those material facts in dispute to this court's attention. And it's the county's position that they failed to do so. Touching on some of the other issues, there was a void for vagueness claim that was raised. It's obviously the county's position that that's barred for lack of standing. The Supreme Court precedent on that is fairly clear, that if the law in any way applies to you, that you are subject to it, that you can't raise what is in essence becomes a hypothetical void for vagueness argument. Judge Chasnow disposed of that on a standing requirement, but she also looked at the underlying merits in case standing, this court decided that standing was, I guess, existed for purposes of a challenge. And she found that on the void for vagueness piece, that it wasn't void for vagueness, that when you look at can people of ordinary, ordinary people using ordinary intelligence, using their ordinary common sense, can they understand the restrictions imposed by CB 46 and 56? In essence, that adult entertainment that's designed to sexually excite, sexually arouse or excite another person is prohibited. And Judge Chasnow obviously found that that was not vague, that those are terms that have been employed in other jurisdictions, specifically the Kev versus, I think it's Kipsap County case out of the Ninth Circuit, found that similar language was appropriate. Similar language is used in federal criminal statutes, outlying sexual contact with child or children and minors. They're also used throughout state law in the same circumstances. So the simple fact that the county has to show some manner of intent doesn't make the statute void for vagueness, it simply puts a burden on the county to show that whatever activities these adult entertainment clubs are engaging in, that they're engaging in something that's really designed not for entertainment or mainstream media, plays, things of that nature, but they're really doing something that's designed to titillate the paying patron. And that sort of segues us into the other argument that was raised, which was whether this statute is overbroad. And that's one where the county has looked at this, and we are believed squarely within this Court's precedent in the Carindola 2 case. In the Carindola 1 case, I believe there was a North Carolina statute that had similar language, language prohibiting caressing, fondling, simulated sex or masturbation. However, there was no limitation on how that applied to plays, artistic performances, educational films, such as things about the horrors of rape, I think is one of the comments that comes out of Carindola 1. Judge Chasnow, however, found that by utilizing the language with an intent to sexually arouse or excite another, that the county was sufficiently curbed in its enforcement that we would not catch a significant amount of protected conduct within the ambit of these statutes. And we would suggest that under all the, under Carindola 1, 2, and the Chappelle case coming out of this circuit, dealing with the Virginia criminal statute, criminalizing the impersonation of law enforcement officers, that there is no significant realistic argument that the county will capture significant protected activities. And the standard on over-breath is so broad or so high, excuse me, that for this court to utilize the over-breath, it must be clear and it must be extreme in the sense that the county must get a significant amount of protected conduct. And there's been no showing of that by appellants, or by the appellants in this case. So Miley Cyrus is protected. I think she's toeing the line. She may be, but, Your Honor, I think it's pretty clear that when you look at the quote from this circuit where it said, you know, nobody would mistake NFL cheerleaders for their dancing and their activities on the field for something that's simulating sexual activity or masturbation. But the same can be said that nobody's going to confuse Madonna's performance on a stage where it's professional, your patrons are set back from a gentleman going to what is known as a strip club for a lap dance. The two are fundamentally different. The average citizen knows the difference, can discern the difference through common dictionary definitions, which I didn't realize there was a dictionary definition of lap dance until preparing our brief for this case, which we provided to the circuit. But it's certainly not going to chill protected activities. And then there were a number, counsel just raised the equal. Mr. McCarthy, I'm on TV. I'm going to get you to switch gears a second. Could you tell me what distinguishes the special exception process from a license? Well, when you look at the line of licensure cases, and I think the FW case that Judge O'Connor wrote the, I think, the plurality opinion on, there you had no, you could not engage in adult entertainment as a matter of right. You had to obtain the license first before being able to engage in adult entertainment. Here the statute falls more in Renton because anywhere in the I-2 zone you are able to, as a matter of right, open up a building as long as you meet the setback requirements and engage in adult entertainment with no license whatsoever. But the exception requirement is not going to apply to somebody who wants to open adult entertainment in I-2. It applies to somebody who wants to operate it somewhere else. Correct. And, well, somewhere else, the only people that were entitled to obtain the special exception were pre-existing businesses. And we think that was a benefit the county provided because constitutionally we could have said, you have to move to the I-2 zone. Here is your amortization time frame to remove the constitutional concerns with basically requiring an existing business class. You have to move and we could have been done with that. If we were doing an as-applied challenge, that's the analysis we would use. But my understanding is the plaintiff is also making a facial challenge. So it's in that context that I ask whether or not it can be distinguished from a license. The one case they rely on is the Lady J case, I believe, out of the 11th Circuit. And there the lady, the circuit found that it was a license and that it fell into the prior restraint analysis because of the lack of available sites as a matter of right. In Lady J, I believe there were 15 businesses that needed to relocate. The court only found two sites as a matter of right. So the other 13 businesses would have required the special exception. Thus, looking at it as a whole, more businesses required the license than not. Here, with the county's 62 available sites in adult... No, we're talking about a facial challenge. If I want to open an adult entertainment business in Prince George County and I don't want to open it in the I-2, I come and I want a special exception because I want to open it in another zone. The statute does not permit that, Your Honor. Unless I get a special exception. No, actually the statute does not permit any other business to obtain a special exception to go into any other locale. The only businesses that could obtain a special exception were pre-existing adult entertainment businesses. Okay, so it would not even be possible for me to get a license to conduct adult entertainment anywhere other than I-2. Correct. If you were a new business arriving in Prince George's County, Maryland, and you wanted to open up an adult entertainment facility, you must do so in the I-2 zone. Okay, I think I understand that. Let me just ask you one other question about the special exception process. Is there a time limit on when a decision has to be made as to whether or not a special exception will be granted or not? There was no specific time limit referenced in this legislation, nor did either of the parties cite any specific time legislation in either of its briefs. So the answer is no. Yes, Your Honor. You heard your colleague, Mr. Smith, make two claims about the exception requirement. First, that the standards are exceedingly vague and there are no specific factors that the county or, for that matter, an applicant can consider in deciding whether or not it qualifies for the exception, except for, he says, the qualification that if you're politically connected, you get an exception. How do you respond to that? Your Honor, I would address that twofold. And first, the factors that are applied here are substantially similar to the factors that this Court approved in the Steakhouse case. Additionally, those factors aren't specific to adult entertainment. They are the general special exception factors that apply to any and all businesses that must obtain a special exception. So if you were a junkyard, those factors would apply. If you wanted to open a chemical factory in Prince George's County, those factors would apply. So it's not as though those factors were created only for adult entertainment facilities. They are the generally applicable factors throughout Prince George's County. So from that end, if every business from a hospital to doctors to anybody that needs a special exception is subject to them and goes through the ordinary judicial review process, to argue that somehow when they're applied to this adult entertainment business that they take on this new character that they're not specific enough, I would suggest to the Court that the law simply cannot stand for that. The law must look at the fact. I would agree if we had tailored specific requirements to the adult entertainment. But the fact that they're not would suggest that if all these other businesses can navigate this and these are considered generally applicable land use standards, that adult entertainment businesses should be able to navigate them as well. The politically connected comment, Your Honor, I would say was not before Judge Chasnow in making any of these decisions. That is a subsequent case that's actually pending currently in front of Judge Chasnow. She has a case that is related to this business which is known as the Ebony Inn. The materials that were provided in the reply brief were not before Judge Chasnow when she made her decision and simply aren't pertinent or relevant to this Court's consideration in reaching a decision on that. So I would suggest that that comment, while colorful, is simply not appropriately before the Court. And unless the Court has any other questions on any of the other claims, I do want to address the equal protection claim briefly. I think it's important to note that the appellants never challenged Judge Chasnow's finding that in the First Amendment context, that the county's regulation of the secondary effects of adult entertainment businesses met a substantial governmental purpose. That has not been challenged. It's not challenged here before you today. So if the county under First Amendment context has reached the burden and established that it is regulating a substantial governmental purpose, it's hard to imagine any specific circumstance where when you're looking at equal protection at a rational review standard, that if we're already meeting the higher intermediate standard where we don't meet the equal protection standard. And Judge Chasnow actually found exactly that, relying on this Court's precedent in the Hart Bookstore case, basically saying that if you've met the First Amendment, if you've overcome the First Amendment hurdle, you've certainly overcome the equal protection hurdle as well. And with that, the county would submit on its briefs and ask this Court to deny the appeal. Thank you very much. Let me pick up on the Miley Cyrus or the NFL cheerleader comment. I think if you look at the language of the statute where it says that a person who is unclothed or in such attire, there's no way that the county should be arguing that Miley Cyrus is protected. Because in Cronulla I, this Court struck down the statute for that very purpose. There was no limiting clause. There was no statement that this doesn't apply to artistic work. Similar. Well, but now we have the qualifier, so how does that help you? And the qualifier is that with the intent to sexually arouse or excite another person. So we have the county again saying, we will determine, and only we will determine, if Miley Cyrus or the NFL cheerleader touching her breast or her butt is intended to sexually arouse or excite another person. And I would say for just a general argument, that the NFL cheerleaders, they're there to excite another person. They're there to excite the crowd. And so them doing their chair and them doing touching or whatever. But the question is whether they're there to excite the crowd sexually. And I don't think most folks go to an NFL football game to be sexually aroused. At least I don't. It says or excite another person, Your Honor. That statute is clear. With the intent to sexually arouse or excite another person. I think sexually qualifies both of those, both of what follows. Right. But back again, like in legend, the county made the argument in the legend case to say, we know what the law is, and we will not enforce it in certain circumstances. And this court said, while you may know the law and you may choose not to interpret in certain circumstances, that is not the standard. And that's why this court struck down and remanded the case in the legend case, because it says the public should not be at the whim of the county's, what the county, how the county intends to interpret the law. It should look at, a person should be able to look at the law and says, okay, this is what it says, because you're subjected to criminal prosecution or otherwise. This is what the law says. And here are the things that you need to know to say, if you do X, you will be in violation of the law. If you do Y, you're not in violation of the law. My argument is that this statute is similar to the Canola case, Canola 1, where this court says that, no, it went too far. It covers artistic work. It covers work about, for example, example about rape. It covers any artistic work that, not only in the provisional strip club, but any, any, and it says, it covers any artistic work, any, the statute says, any exhibition, performance, or dance of any type conducted in a premise where such exhibition, performance, or dance involves a person. It doesn't say it exempts play. It doesn't say only in strip club. The language that the county is saying, well, we says with the intent to sexually arouse or excite another person. That means strip club. And any reasonable person should be able to interpret and say, oh, that only applies to strip club. It doesn't apply to Marley Cyrus. It doesn't apply to the NFL cheerleader. It doesn't apply to Beyonce. It doesn't apply to the famous artworks or the plays that involve the exposure of the human body. And for that reason, we're saying that this statute is extremely vague and it should be struck down. Now, had the county, as in Cronulla 2, where they said, they went back and they said, okay, we will limit this. This doesn't apply to art, to work of art. For example, plays and such like that. And then this court said, okay, now you're on good grounds. I think there's a similarity between Cronulla 1 and this statute. There's strictly no similarity between Cronulla 2 and this statute. Because this statute, unlike the Cronulla 2 statute, does not have a limited clause in it. And regarding the question that was asked about the experts, I will concede that our experts did say that this statute is vague. That there are 15 space available. But if you look in the question, he said that's a caveat. And the caveat is that there were no findings about how many spaces have the long-term lease. Regarding the appellee's argument regarding what this court has done regarding the steakhouse case, I think this court clearly set out and said steakhouse, the statute was constitutional because it gave every person, every business the guidelines. Specific guidelines that say here you need to have X, Y, and Z parking. You need to have this much lighting. And you need to know if your building is going to adversely affect the other property around there. I must say I don't understand your special exception argument at all. Because it seems to me the constitutional analysis is whether there is a license on the expression. And in this case, you can go to I-2 and not have to do anything. You can do what's protected constitutionally in I-2. The only reason for the special exception is to increase, to mitigate the effect on current businesses and allow them that possibility under existing statutes. It's not intended to address whether a First Amendment is restricted. It clearly is restricted. You can't be in any place other than I-2. But time, place, and manner allows the county to do that. So I don't understand what the whole argument about the special exception, how it's relevant if we conclude there are alternative sites where there is no restriction. Well, that's the argument, Judge, is that there was a dispute that there was not sufficient site available. I understand what you say there was, but the question is can you point to how at least 60 of those sites was disputed, how you disputed 60 sites? You suggested as to two of them that there were restrictive covenants, which as a matter of law may not be subject to consideration, but let's set those aside. That takes care of two properties out of the 62. Now, what's your answer to the other 60? And there's nothing in the record that challenges those 60. There was a dispute between the two experts, how many sites were available. That's my argument, that the appellant's experts said that there were, I believe, 15, with the caveat in that the county's experts said that there were 60. But that's my argument, is that there were material factual disputes. The district court judge chose to believe the county's expert and not the appellant's expert. Okay, thank you very much. Judge Traxler, is it okay if we keep going? Yes, sir. Okay, we're going to come down and greet counsel and proceed on to the third case.
judges: Paul V. Niemeyer, William B. Traxler, Jr., Albert Diaz